[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DISCOVERY BY PLAINTIFF OF SURVEILLANCE FILMSPREPARED BY DEFENDANT
CT Page 3456
The question presented is whether the defendant should be required to produce any surveillance films taken of the plaintiff in a personal injury action for the purpose of impeaching the plaintiff's claims of injury.
The Court has read cases on both sides of the issue. Cases permitting such discovery are Labonte v. Grossman, Inc.,15 Conn. L. Rptr. 445 (1996), Pappalardo v. Pellici, 14 Conn. L. Rptr. 320
(1995), Jiser v. Boroway, 13 Conn. L. Rptr. 75 (1994), Davis v.Daddona, 1 Conn. L. Rptr. 445 (1990). Cases not allowing such discovery are Dzurenda v. Burdo, 9 Conn. L. Rptr. 60 (1993),Spooner v. Champney, 7 Conn. L. Rptr. 25 (1992), Kriskey v.Chestnut Hill Bus Company, 1 Conn. L. Rptr. 610 (1990).
Section 218 of the Practice Book provides that material such as surveillance tapes prepared on anticipation of litigation can be procured only upon a showing that the party seeking the discovery "has substantial need of the materials in the preparation of his (or her) case and that he (or she) is unable without undue hardship to obtain the substantial equivalent of the materials by other means." But the section goes on to say that notwithstanding this, discovery of such material shall not be allowed if it would disclose "the mental impressions conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation."
(a)
One of the reasons often advanced by courts for not permitting disclosure of surveillance tapes is that the purportedly injured plaintiff "should already know what public physical activities she has carried on, she is able to present the essentials of her case without the immediate need to see any surveillance tapes made by the defendants of those same activities", Spooner at 7 Conn. L. Rptr. page 26.
This observation fails to take into account of authentication problems presented by a surveillance film. As one court has noted:
 . . . "the camera may be an instrument of deception. It can be misused. Distances may be minimized or exaggerated. Lighting, focal CT Page 3457 lengths and camera angles all make a difference, action may be slowed down or speeded up. The editing or splicing of films may change the chronology of events. An emergency situation may be made to appear common place. That which has occurred once can be described as an example of an event which recurs frequently. . . . that which purports to be a means to reach the truth may be distorted misleading, and false." Snead v. American Export-Isbrandtsem Lines, 59 FRD 148, 150 (1973). See also authentication concern raised in Labonte at 15 Conn. L. Rptr. page 446, also see Jenkins v Rammer, 350 A.2d 473, 477 (N.J., 1976).
Thus the New York Court of Appeals in interpreting practice rules similar to our own regarding work product held:
 . . . "that plaintiffs have established that they cannot without undue hardship obtain the substantial equivalent of surveillance materials by other means. Although plaintiffs are aware of their own physical ailments and the nature of their disabilities, this is no substitute for viewing the surveillance materials taken by the defendants. It is only by viewing the surveillance film that plaintiffs can determine when it was made and whether the activities depicted were typical of that time or were the product of an emergency situation. Visual evidence of this kind is unique because it memorializes a particular set of conditions that can likely never be replicated. Only by observing the conditions as they appear can the plaintiffs respond to possible distortions or prepare to explain seeming inconsistencies to the jury."
DiMichel v. South Buffalo Ry. Co., 590 N.Y.S.2d 1 (1992).
Also objection to disclosure of such films in effect fails to take account that the filming occurs in a temporal context — there's the date of the injury, the date when the film was taken, the date of any deposition, the date of any trial Physical CT Page 3458 conditions can improve, worsen or stay the same. As one federal court said in permitting this type of discovery: "Since plaintiff's past activities obviously can no longer be filmed the barrier of the work product rule is lifted. See Fed R. Civ. P. 26
(b)(3) ("Showing that the party seeking discovery has substantial need of the materials in the preparation of his (or her) case and that he (or she) is unable without undue hardship to obtain the substantial equivalent of the materials by other means)", Martin v.Long Island Ry Co., 63 FRD 53, 55 (E.D.N.Y., 1974) (emphasis added).
I believe a substantial need exists for the disclosure of these materials.
(b)
Another objection is that requiring such disclosure in any event is not permitted because "it would have the impermissible but certain effect of disclosing the mental impressions of the defendants or their attorney or insurer representatives . . . for the only logical inference to be drawn would be that the defendants or their attorneys or agents were contemplating a defense based on; their impressions that the plaintiff's claimed physical disabilities were exaggerated or nonexistent", Spooner at 7 Conn. L. Rptr. page 26.
The problem with this position is that it goes too far and would make P.B. § 219 inoperable. With this interpretation it could be said that anything "prepared in anticipation of litigation" in some way reflects the mental impressions or opinions of the attorney. Since life is short and time is limited the fact that a lawyer did one thing instead of another or prepared one aspect of his or her case indicates to some extent the lawyer's opinion or view of the case. To say that disclosure of surveillance films would unfairly reveal to the other side that the defense contemplates an attack on the plaintiff's damage claim says nothing more than has already been said in the case. The defense has a right to and more often than not explicitly contests all of the plaintiff's claims including claims for damages. If that isn't so why would defense contests have a surveillance film made in the first place. The fact that a surveillance film has been made makes clear that the defense contests the injuries — to then preclude discovery of the surveillance film on that ground would go beyond any further interest the defendant would have a right to protect.
The federal rules and our rules which were modeled upon them CT Page 3459 sought to protect explicitly expressed attorney opinions, impressions or theories. For example if disclosure were permitted in this case the plaintiff would not be entitled to any narrative accompanying the film or any instructions given to the individual making the film. But the whole point of a surveillance film is that it is done in secret. Defense counsel isn't choreographing the plaintiff's actions; it is those actions that are relevant to the defense. So it would be hard to see, except in the most unusual circumstances not present here, that the mere taking of the film can be said to reveal the lawyer's mental impressions, opinions or legal theories except in the most elementary sense — contesting the general damage claim. But as noted previously that broad protection cannot be given or the substantial need exception to the work product rule would never be operative.
(c)
Other objections to disclosure are based on the argument that disclosure would allow the plaintiff to tailor his or her testimony are not persuasive. The same argument can be and historically was made against all attempts to liberalize discovery. It makes an assumption that one or the other side in a case — here the defendant — is the repository of truth and fair dealing and the plaintiff by his or her status as such is not to be trusted.
It is true that in order to protect the value of surveillance films for impeachment purposes of a plaintiff who exaggerates his or her disabilities, it is probably necessary that disclosure only be made after a deposition is held of the plaintiff. Daniels v.National Railroad Passenger, 110 FRD 160, 161 (S.D.N.Y., 1986). Speaking on this question the Snead court said with regard to the plaintiff:
 "Once his testimony is memorialized in deposition, any variation he may make at trial to conform to the surveillance films can be used to impeach his credibility, and his knowledge at deposition that the films may exists should have a salutary effect on any tendency to be expansive. At the same time, if the plaintiff believes that the films seem to give a false impression, he can then obtain the necessary data to serve as a basis for cross-examination", 59 FRD at p. 151. CT Page 3460
Based on this reasoning the Snead court ruled that the surveillance material need not be turned over until after the deposition of the plaintiff as to injuries and disabilities. After the deposition the plaintiff was allowed to look at the films.
(d)
In light of the foregoing the court concludes that the plaintiff should have a right to inquire as to the existence of any surveillance films and a right to their production under the terms which will be set forth by the court. In this regard it is true that the discovery request does go beyond the standard discovery request but due to the powerful nature of this material as an impeachment tool, the plaintiff should have the right before trial to examine the films to determine whether the filming was misleading or raises the possibility that the jury might be mislead by the filming technique used or the date the filming was done. It goes without saying that the means to impeach in this situation should not be the exclusive property of the defense.
It is further ordered that if the plaintiff has not been deposed, the defendant shall have the right to depose her prior to producing the surveillance films. Such depositions should take place no later than forty-five days from the date hereof or at such other time as the parties agree. The actual production shall be accomplished at the time of the conclusion of the plaintiff's deposition, cf Jiser, et al. v. Boroway, et al,13 Conn. L. Rptr. 75, 76 (1994).
Failure to schedule a deposition by the defendant within 45 days or to contact the plaintiff to negotiate a different mutually agreeable date within that time will be considered as a waiver by the defendant of its right to withhold deliver of the surveillance material until after a deposition.[1]
Thomas J. Corradino, Judge